FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 04, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LACIE G., | NO. 4:25-CV-5161-TOR |
| Plaintiff, | |
| v. | ORDER GRANTING COMMISSIONER'S BRIEF |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are Plaintiff's Opening Brief (ECF No. 14) and the Commissioner's Brief (ECF No. 16).  This matter was submitted for consideration without oral argument.  The Court has reviewed the record and files herein and is fully informed.  For the reasons discussed below, the Commissioner's Brief (ECF No. 16) is **GRANTED**, and Plaintiff's Brief (ECF No. 14) is **DENIED**.

### JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING COMMISSIONER'S BRIEF ~ 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.*  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation

ORDER GRANTING COMMISSIONER'S BRIEF ~ 2

omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis

ORDER GRANTING COMMISSIONER'S BRIEF ~ 3

proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe, or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

ORDER GRANTING COMMISSIONER'S BRIEF ~ 4

RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ORDER GRANTING COMMISSIONER'S BRIEF ~ 5

**ALJ'S FINDINGS**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on January 27, 2023, alleging a disability onset date of October 7, 2019.  Tr. 19.  The claim was denied initially on August 10, 2023, and upon reconsideration on January 29, 2024.  *Id.*  A telephonic hearing was held before an administrative law judge ("ALJ") on October 29, 2024.  *Id.*  On November 1, 2024, the ALJ denied Plaintiff's claim.  Tr. 33.

As a threshold matter, the ALJ found Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2024.  Tr. 21.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 7, 2019, the alleged onset date.  *Id.*  At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, migraines, depressive disorder, and anxiety disorder.  *Id.*  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 22.  The ALJ then determined Plaintiff had the residual functioning capacity to perform light work except as follows:

> [Plaintiff] could occasionally climb ramps and stairs; she could never climb ladders, ropes, or scaffolds; she could tolerate exposure to moderate noise; she could not have concentrated exposure to extreme cold, vibration, pulmonary irritants, or hazards (e.g., unprotected heights, moving mechanical parts); she would be capable of simple, routine tasks; she could have occasional, superficial interaction with the

ORDER GRANTING COMMISSIONER'S BRIEF ~ 6

public and frequent interaction with co-workers and supervisors. Tr. 25.

At step four, the ALJ found Plaintiff could not perform past relevant work. Tr. 32.  At step five, the ALJ determined that Plaintiff's ability to perform work at all exertional levels is "compromised by nonexertional limitations" and sought testimony from a vocational expert as to the "extent to which these limitations erode the occupational base of unskilled work at all exertional levels[.]"  Tr. 32. The vocational expert testified that an individual with Plaintiff's RFC, age, and background would be able to perform the requirements of representative occupations that exist in significant numbers in the national economy such as Router, Merchandise Price Marker, and Laundry Aid.  *Id.*  Accordingly, the ALJ determined that Plaintiff had not been under a disability from October 7, 2019 through November 1, 2024, the date of the ALJ's decision.  Tr. 33.  The Appeals Counsel denied review on September 26, 2025, making the ALJ's decision the final decision and subject to judicial review.  20 C.F.R. § 404.981.

## ISSUES

Plaintiff seeks judicial review of the ALJ's final decision denying her disability insurance benefits under Title II of the Social Security Act.  ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's subjective symptom

ORDER GRANTING COMMISSIONER'S BRIEF ~ 7

testimony; and

2. Whether the ALJ properly considered prior administrative medical findings.

**DISCUSSION**

**A. Plaintiff's Subjective Symptom Testimony**

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit Plaintiff's subjective symptom testimony. ECF No. 14 at 3-14.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

ORDER GRANTING COMMISSIONER'S BRIEF ~ 8

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7–8; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ first summarized Plaintiff's symptom testimony.  Tr. 26.  Plaintiff testified that she suffers from severe headaches three to four times per week which cause blurry vision and any noise or bright lights make her vomit, requiring Plaintiff to stay in a dimly lit room with no sound.  *Id.*  Plaintiff reported that medications do not always work and never completely alleviate her pain.  *Id.*  However, Plaintiff did report that Botox injections reduced the severity of her headaches forty to fifty percent.  *Id.*   The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence based on the objective medical evidence, Plaintiff's pattern of past recorded statements, her course of treatment, and her daily activities.  Tr. 26, 29.

*1. Objective Medical Evidence*

First, the ALJ found Plaintiff's reported disabling symptoms inconsistent with the objective medical evidence.  While an ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence, such objective medical evidence is still a relevant factor.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th

ORDER GRANTING COMMISSIONER'S BRIEF ~ 10

Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).   The ALJ noted largely normal physical exams with documented "normal findings, including no distress, no neurological deficits, and normal or near-normal mental status."   Tr. 29 (citing Tr. 2203, 2206, 2228, 2233, 2239, 3941, 3945, 3948, 3971, 3974, 3979, 3982).   The ALJ concluded that these normal findings undermined the alleged severity of Plaintiff's headaches because she reported 31/31 headache days per month and therefore presumably had headaches at every medical appointment, yet "exams ma[de] unremarkable findings, including no distress or other appearance of discomfort or pain," which "shows her headaches do not significantly impair her presentation."   Tr. 29.   Plaintiff argues that normal neurological findings during an exam do not undermine a claimant's alleged severity and frequency of migraines unless the ALJ specifies actual inconsistency.   ECF No. 14 at 5-6.   Plaintiff cites *Ferguson v. O'Malley*, 95 F.4th 1194 (9th Cir. 2024) in support.   *Id.* at 5.   In *Ferguson*, the Ninth Circuit held that an ALJ did not adequately discount the plaintiff's headache symptom testimony where the ALJ only cited normal examination results in discounting plaintiff's symptom testimony.   *Ferguson*, 95 F.4th at 1200-01.   The Ninth Circuit noted that the normal examination findings did not suggest or indicate that the severity of the plaintiff's headaches was less than alleged and the ALJ did not explain any

ORDER GRANTING COMMISSIONER'S BRIEF ~ 11

inconsistency. *Id.* at 1200. Here, the ALJ did not only rely on normal examination findings in discounting Plaintiff's testimony but provided several other reasons which viewing all together suggests or indicates the severity of Plaintiff's headaches is less than alleged. The ALJ's reasoning would have been insufficient had the ALJ only relied on the normal examination findings.

Plaintiff next argues the ALJ conflated Plaintiff's baseline headache days with her episodic severe migraines which the record consistently identifies as a separate issue. ECF No. 14 at 5-6. However, the ALJ noted that Plaintiff's testimony was that her average day headache pain even with the Botox was at a 5-6/10 in severity and the bad days occurring three to four times per week were at a 9-10/10 severity. Tr. 51-52. Therefore, the ALJ's reasoning that Plaintiff's normal presentation at appointments undermined the alleged severity of her daily headaches was reasonable and substantially supported by citations to the record.

*2. Past Recorded Statements*

Plaintiff testified at the October 29, 2024 hearing that she experienced severe migraines that affected her functioning three to four times per week even with the Botox treatment. Tr. 50-52. She testified that the Botox treatment reduced the intensity of her headaches by fifty percent but that she still needed to be in bed half the day on days she had bad headaches. *Id.* Plaintiff testified that even with the Botox, her average daily headache pain was a 5-6/10 and 9-10/10 on

ORDER GRANTING COMMISSIONER'S BRIEF ~ 12

a bad day.  Tr. 52.

In discounting Plaintiff's symptoms testimony, the ALJ reasoned that Plaintiff had "repeatedly reported to her treating neurologist that Botox reduces the intensity of her migraines to only 2-3/10 and that Maxalt works well for severe headaches."  Tr. 29 (citing Tr. 3979, 3982, 3941, 3945, 3948, 3971, 3974, 2202, 2206, 2228, 2232, 2238).  Plaintiff argues that the ALJ's conclusion is contradicted by the record and that Plaintiff reported daily headaches at 2-3/10 but severe migraines at 7/10.  ECF No. 14 at 7.  However, the records Plaintiff relies on as examples include that information under the "HPI" (history of present illness) and were reported by Plaintiff prior to starting Botox.  Tr. 396, 3979, 3982.  The ALJ's cited records consistently show Plaintiff reporting a decrease in headache intensity from 5-7/10 to 2-3/10 from the Botox treatment and a reduced frequency of severe headaches to only a couple times a month if at all.  For example, in April 2022, Plaintiff reported experiencing 50% reduction in intensity of headaches with Botox and "around 2-3/10 as opposed to 5-6/10 and no severe ones."  Tr. 2232.  Plaintiff's provider noted, "Good benefit with intensity reduction in migraines after Botox injections."  Tr. 2233.  In May, 2022, Plaintiff reported continued improvement with Botox from an intensity of 5-7/10 prior to Botox to 2-3/10 after treatment.  Tr. 2228.  On August 4, 2022, Plaintiff reported headache intensity remained at reduced levels, and she noted a reduced migraine frequency from two

ORDER GRANTING COMMISSIONER'S BRIEF ~ 13

to three times per week to one to three times per month. Tr. 2206. However, on August 18, 2022, Plaintiff reported an increase in headaches/migraines in the previous two days around her cycle. Tr. 364. In November 2022, Plaintiff reported that headache intensity remained around 2-3/10 and that she only had to take migraine medication twice the previous month, however, noted more intense headaches in the last two weeks due to the Botox wearing off and changing weather. Tr. 3974. In February 2023, Plaintiff reported "daily headaches still at 2-3/10 and some 4/10 headaches and very rare 5-7/10 events." Tr. 3971. In May 2023, Plaintiff reported having severe migraines twice per month and a continued reduction of migraine intensity by 50% with Botox. Tr. 3949. Plaintiff also reported from May 2023 through June 2023 that Maxalt worked well for treating severe headaches. Tr. 3949, 3948, 3944, 3942, 3982, 3979. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original). The ALJ did not err in concluding Plaintiff's reported frequency and intensity of her headaches was undermined by her past recorded statements.

Plaintiff argues that even accepting the ALJ's determination that Plaintiff suffered from severe migraines only two to three times per month, Plaintiff's reported six to eight hour length of recovery renders her disabled. ECF No. 17 at

ORDER GRANTING COMMISSIONER'S BRIEF ~ 14

7. However, the ALJ's cited records consistently indicate that Plaintiff was able to treat her more severe headaches with medication. The records report Maxalt was working well for Plaintiff's severe headaches. Additionally, in July 2023, Plaintiff reported that was treating migraines with rizatriptan and ondansetron (Tr. 2160) and reported in November 2023 that the combination "works well." Tr. 3974. Plaintiff argues her testimony that the migraines were still functionally limiting is consistent with the longitudinal record but does not cite to any supporting treatment notes. ECF No. 14 at 7-8. The Court finds the ALJ substantially supported discounting Plaintiff's symptom testimony as inconsistent with her past recorded statements.

### 3. Course of Treatment

The ALJ also discounted Plaintiff's testimony on the basis of her course of treatment:

> I also find the claimant's course of treatment has been mostly routine and conservative, and not consistent with her disability allegations. Her treatment has consisted of routine primary care visits and successful management of headaches with Botox, along with sporadic medical visits for acute issues. She has not regularly followed with any specialty for management of any condition other than migraines, and she went about a year without visiting a neurologist, suggesting reasonable control of migraines during that period. Her psychotropic medication are managed by her primary care provider rather than a psychiatrist or other specialist, suggesting a low level of case complexity and severity. The claimant admitted at the hearing that she has health insurance and is able to get whatever treatment she feels she needs, so the lack of treatment show she does not feel the need for treatment, which suggests she is less troubled by her symptoms than

ORDER GRANTING COMMISSIONER'S BRIEF ~ 15

she alleges.

Tr. 29.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  Plaintiff argues that Botox injections do not constitute conservative treatment, especially where there is nothing in the record suggesting more aggressive options were available or appropriate.  ECF No. 14 at 8.  District courts appear to be split on whether the treatment of migraines with Botox injections constitutes a conservative form of treatment.  *Compare Ruby Janet A. v. Dudek*, No. 24CV180-LR, 2025 WL 790969, at *8 (S.D. Cal. Mar. 12, 2025) (characterizing Botox injections as a conservative form of treatment), *with Jennifer L. v. Comm'r of Soc. Sec.*, No. 3:23-CV-01591-JR, 2024 WL 3899470, at *3 (D. Or. Aug. 22, 2024) (finding neurologist's recommendation of Botox for migraines when other medications failed to alleviate symptoms not a conservative medical treatment).  However, courts agree that an ALJ may not rely on a conservative course of treatment in discounting a claimant's symptom testimony where more aggressive treatments were not vailable or recommended.  Nichole K. v. Saul, No. 3:19-cv-00630-SB, 2020 WL 2393854, at *6 (D. Or. May 11, 2020) ("[T]he record does not reflect that more aggressive treatment options are appropriate or available.

ORDER GRANTING COMMISSIONER'S BRIEF ~ 16

A claimant cannot be [faulted] for failing to pursue non-conservative treatment options where none exist.") (citing *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

Here, there is no indication in the record that more aggressive treatment options were available to Plaintiff beyond Botox injections. Thus, the ALJ cannot discount Plaintiff's testimony on the basis Botox was a conservative treatment alone. However, the ALJ also provided other reasoning including the observation that Plaintiff went a year without visiting a neurologist, "suggesting reasonable control of migraines during that time." Tr. 29. The referenced records show that Plaintiff had a neurologist appointment in September 2020 where her provider reported that they would apply for Botox, "given ongoing daily headaches and failed several preventative medications[,]" however, Plaintiff did not have a follow-up visit until February 2022 and began Botox in March 2022. Tr. 395. 392. Plaintiff argues that she did contact neurology regarding a follow-up appointment in May 2021 (Tr. 416) and requested a refill of her migraine medications in July 2021 (Tr. 411). ECF No. 14 at 10. It appears from the record that Plaintiff did make contact with the neurologist's office prior to scheduling the February 2022 appointment and even had an appointment scheduled for September 2021, however, it is unclear from the record why it did not occur. Tr. 411, 410. In any event, this evidence does not contradict the ALJ's conclusion that Plaintiff did not

ORDER GRANTING COMMISSIONER'S BRIEF ~ 17

return to the neurologist's office for a follow-up appointment until February 2022. Additionally, Plaintiff's request for medication refills supports the ALJ's contention that Plaintiff may have had reasonable control of her migraines with medications during the time between neurology appointments.

Even if Plaintiff's migraines were not being well managed during this gap in treatment, the ALJ noted elsewhere in the decision that Plaintiff may have experienced relief earlier in the relevant period "[h]ad she proceeded with Botox when her doctor recommended" it in September 2020. Tr. 23. Plaintiff argues the ALJ's reasoning is not substantiated by the record because her neurologist only indicated that they would "apply for Botox" in September 2020 and nothing in the record suggests Plaintiff did not proceed as recommended. ECF No. 14 at 11. However, records from the same day of the September 2020 appointment indicate the neurologist's office left a voicemail with Plaintiff requesting she "call back and schedule Botox injections as per Dr Mannava." Tr. 442. Yet, Plaintiff did not actually pursue Botox treatments until over a year later. Plaintiff notes that Plaintiff reported to her primary care provider in May 2021 that she had not made a follow-up appointment with neurology and had worsening anxiety and depression in part due to money issues (Tr. 412). ECF No. 14 at 11. However, the ALJ considered Plaintiff's financial status and noted in the decision that Plaintiff testified at the hearing that she had health insurance and "is able to get whatever

ORDER GRANTING COMMISSIONER'S BRIEF ~ 18

treatment she feels she needs, so the lack of treatment shows she does not feel the need for treatment, which suggests she is less troubled by her symptoms than she alleges." Tr. 29. "[I]n assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded by regulation on other grounds* (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)). Substantial evidence supports the ALJ's decision to discount Plaintiff's symptom testimony on the basis of Plaintiff's course of treatment.

### 4. Daily Activities

An ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Finally, the ALJ discounted Plaintiff's symptom testimony based on her reported daily activities including her functional report where "she reported that she has [no] problem with personal care, makes meals, does light cleaning, washes dishes, sweeps, cleans counters, goes outside 2-3 times per week, goes out alone, shops in stores, and manages financial accounts." Tr. 29 (citing Tr. 214-220). The ALJ concluded "[t]hese activities required fundamentally intact physical and mental functioning." Tr. 29. Plaintiff argues the ALJ failed to explain how Plaintiff's daily activities are inconsistent with Plaintiff's reported

frequency of her migraines.  ECF No. 14 at 12.

Plaintiff testified that she suffers from "pretty bad headaches every day, all day long" and migraines three to four times per week.  Tr. 50-51.  During those migraines Plaintiff testified her vision blurs to the point she cannot read or type and is sensitive to any noise or bright light.  Tr. 50.  On those days, Plaintiff will be in bed around "six to eight hours."  Tr. 52.  She testified that she does not clean a lot because she gets dizzy and unless her friend comes over to help clean, she does not get much done.  She testified that most days she is in bed in the mornings or the afternoon when she is home and does not "really venture out into [her] house."  Tr. 58-59.  This testimony does not appear to be incongruent with Plaintiff's function report where she reported she needed a lot of assistance in cleaning the house and spent most days "at home in bed or doing simple house tasks."  Tr. 215-216.  She also reported in the function report that she needed to take breaks when doing any cleaning because she would get dizzy and feel nauseous and could not do tasks that required her to bend over for the same reasons.  Tr. 214, 216.  The ALJ did not articulate these reported activities were inconsistent with Plaintiff's disability allegations.  However, even if the ALJ did not adequately discount Plaintiff's symptom testimony on the basis of her daily activities, the Court finds the ALJ properly discounted it based on the previous reasons provided.

ORDER GRANTING COMMISSIONER'S BRIEF ~ 20

**B. Prior Administrative Medical Findings**

Plaintiff argues the ALJ's reliance on prior administrative medical findings was not supported by substantial evidence.  ECF No. 14 at 14.

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include; supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(1)-(5).

The ALJ is required to explain how the two most important factors, supportability and consistency, were considered. 20 C.F.R. § 404.1520c(b)(2). These factors are defined as follows:

> (1)    Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2)    Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

ORDER GRANTING COMMISSIONER'S BRIEF ~ 21

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered. 20 C.F.R. §§ 404.1520c(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi,* 32 F.4th 785, 787 (9th Cir. 2022).

*1. Prianka Gerrish, M.D. and Gary Smith, M.D.*

The ALJ found the prior administrative medical findings of Dr. Gerrish and Dr. Smith both persuasive. Tr. 30. Dr. Gerrish opined that Plaintiff had no exertional limitations but was limited to only occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. Tr. 71. Dr. Gerrish further opined that Plaintiff should avoid concentrated exposure to extreme cold, noise, fumes and other pulmonary irritants, and hazards (machinery, heights, etc.). *Id.* Dr. Smith

ORDER GRANTING COMMISSIONER'S BRIEF ~ 22

opined the same limitations but added the additional environmental limitation of avoiding concentrated exposure to vibration.  Tr. 81.  The ALJ noted that both doctors "had much of the record available for review, and they are familiar with Social Security regulations[a]" and found the opinions persuasive, "as they are consistent with the record when viewed as a whole, and they are supported by the narrative explanations they gave."  Tr. 31.

Plaintiff argues that the ALJ's supportability assessment was not substantially supported because the non-examining medical consultants did not give an adequate supportability analysis, but simply listed Plaintiff's impairments and referenced a summary of the evidence.  ECF No. 14 at 15-16.  Plaintiff contends the medical consultants should have explained how Plaintiff's symptoms translated into the opined functional limitations.  *Id.* The Court disagrees. "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  The medical consultants reviewed a summary of the medical evidence in the record and noted what specific evidence supported their opinions as to Plaintiff's limitations.  Tr. 71-72, 80-82. This was sufficient.  *See Shaun H. v. Comm'r, Soc. Sec. Admin.*, No. 2:21-CV-00993-HL, 2022 WL 2955243, at *5 (D. Or. June 15, 2022) (concluding ALJ reasonably evaluated prior administrative findings where the "ALJ noted that all

ORDER GRANTING COMMISSIONER'S BRIEF ~ 23

the state agency medical consultants supported their findings with the medical evidence available at the time"). In addition to noting that the non-examining medical consultants opined limitations were supported by the narrative explanations, the ALJ also compared the opinions to the medical records "which in the case of non-examining consultants is an exercise relevant to both supportability and consistency." *B.T. v. Kijakazi*, No. 22-CV-02182-LB, 2023 WL 6277294, at *8 (N.D. Cal. Sept. 26, 2023); Tr. 31. The ALJ concluded the medical records supported the limitations as opined by Drs. Gerrish and Smith. Tr. 31. The Court finds the ALJ adequately provided supportability and consistency explanations supported by substantial evidence.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 14) is **DENIED**.

2. The Commissioner's Brief (ECF No. 16) is **GRANTED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED August 4, 2026.



THOMAS O. RICE
United States District Judge

ORDER GRANTING COMMISSIONER'S BRIEF ~ 24